IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, )<br>  )<br>Plaintiff,     )<br>  )<br>v.      )<br>  )<br>  )<br>STARMET CORPORATION and  )<br>STARMET NMI CORPORATION,  )<br>  )<br>Defendants.    )<br>  ) | Civil Action No. |

# COMPLAINT

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this complaint and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action under Sections 107(a) and 113(g)(2) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607(a) and 9613(g)(2). The United States seeks to recover costs incurred and to be incurred in conducting actions in response to the release or threatened release of hazardous substances at or from the Nuclear Metals, Inc. Superfund Site (the "Site") located in Concord, Massachusetts. The United States also seeks a declaratory judgment that Defendants are liable for future response costs that may be incurred by the United States in connection with the Site.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. §§ 1331 and 1345. Venue is proper in the District Court of Massachusetts pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391, because the claims arose in this district, the release or threatened release of hazardous substances occurred in this district, and the Defendants reside in, may be found in, and/or have their principal place of business in this district. The Court has in personam jurisdiction over the Defendants.

## DEFENDANTS

3. Starmet Corporation ("Starmet") is incorporated under the laws of Massachusetts and has its principal place of business in Concord, Massachusetts.

4. Starmet NMI Corporation ("Starmet NMI"), a subsidiary of Starmet, is incorporated under the laws of Massachusetts and has its principal place of business in Concord, Massachusetts.

## GENERAL ALLEGATIONS

5. The Site consists of 46 acres of land, including deteriorating facility buildings, in Concord, Massachusetts. Since 1958, various owners and operators have conducted specialty metals research and manufacturing operations at the Site, and have been licensed to use radioactive substances as part of their operations. From 1958 to 1985, various Site operators disposed of manufacturing by-products, including wastes containing depleted uranium, copper and nitric acid, into an unlined holding basin at the Site. Volatile organic compounds including, but not limited to, 1,1,1 trichloroethane, were also disposed of at the Site. Other areas of the

-3-

Site, including but not limited to a sphagnum bog, a cooling water recharge pond, a sweepings pile, septic leaching fields, and a small landfill, are also believed to have been used for the disposal of manufacturing wastes.

6.  In 1972, Starmet, then known as Nuclear Metals, Inc., acquired the Site and began its operations at the Site.

7.  Starmet has been an operator at the Site from 1972 to the present. From 1974 until 1999, Starmet manufactured, among other products, depleted uranium-tipped munitions for the United States Department of the Army ("Army").

8.  Starmet owned the Site from 1972 to October 1, 1997, when it transferred ownership of the Site to a newly-formed subsidiary, Starmet NMI. Starmet NMI has owned the Site from October 1, 1997 to the present.

9.  From 1972 to 1985, when Starmet owned and operated the Site, Starmet disposed of hazardous substances including, but not limited to, depleted uranium, copper, and nitric acid into an unlined holding basin at the Site.

10.  From 1972 to 1980, when Starmet owned and operated the Site, Starmet disposed of volatile organic compounds including, but not limited to, 1,1,1 trichloroethane, at the Site.

11.  Depleted uranium, copper, nitric acid, and 1,1,1 trichloroethane are "hazardous substances" as that term is defined at Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

12.  Starmet and Starmet NMI are persons within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

13.  The Site is a facility within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

-4-

14. Releases, within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), and threatened releases, of hazardous substances, have occurred at the Site.

## RESPONSE ACTIONS TAKEN AT SITE

15. In 1997, Starmet, with the financial support of the Army, excavated approximately 8,000 cubic yards of soil contaminated with depleted uranium and copper from the on-site holding basin and disposed of these soils off-site.

16. On June 14, 2001, the Site was added to the National Priority List (NPL), which is a list of the nation's hazardous waste sites that pose the greatest risk to human health or the environment.

17. From March 2002 to April 2003, EPA performed a time-critical removal action at the Site that involved the installation of a fence around the landfill area of the Site, the placement of a temporary cap on the landfill, and the installation of a temporary liner over the holding basin at the Site.

18. In 2003, EPA entered into an Administrative Order by Consent ("AOC") for the implementation of a Remedial Investigation/Feasibility study for the Site with Whittaker Corporation, Textron, Inc., MONY Life Insurance Company, the Army, and the United States Department of Energy ("AOC Settling Parties").  Pursuant to this AOC, the AOC Settling Parties are funding and implementing a study of the contamination at the Site in order to determine whether a non-time critical removal action and/or a remedial action should be implemented at the Site and, if so, what type of action.

19. In 2004, the Massachusetts Department of Environmental Protection ("DEP") and the Army  entered into an agreement whereby the Army financed the removal of approximately

-5-

3,800 drums of depleted uranium and other hazardous materials that were stored at the Site.  The DEP performed this drum removal from September 2005 to March 2007.

20.  The releases and threatened releases of hazardous substances at or from the Site have caused the United States Environmental Protection Agency ("EPA") to incur costs of response not inconsistent with the National Contingency Plan, 40 C.F.R. Part 300.  EPA's unreimbursed response costs calculated through May 2007, including prejudgment interest calculated from May 1, 2001 through September 14, 2007, are in the amount of about $6.1 million.

## CLAIM FOR RELIEF

21.  Paragraphs 1-20, inclusive, are realleged and incorporated herein by reference.

22.  Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section--

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

* * *

from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for--

(A) all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan; . . .

23.  Starmet NMI and Starmet are liable to the United States, under Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1), for the costs incurred and to be incurred by the United States

-6-

in response to the release or threatened release of hazardous substances at or from the Site, because Starmet is currently an operator at the Site and Starmet NMI is currently the owner of the Site.

24.  Starmet is liable to the United States, under Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), for the costs incurred and to be incurred by the United States in response to the release or threatened release of hazardous substances at or from the Site, because Starmet owned and/or operated the Site during a period of time when hazardous substances were disposed of at the Site.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, the United States of America, prays that the Court:

1.  Enter judgment against Starmet and Starmet NMI and in favor of the United States for unreimbursed response costs incurred by the United States in connection with the Site, pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a);

2.  Enter a declaratory judgment that Starmet and Starmet NMI are liable for all future response costs incurred by the United States in connection with the Site not inconsistent with the National Contingency Plan, 40 C.F.R. Part 300, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2);

3.  Award the United States the costs of bringing this action; and

4.  Grant such other and further relief as the Court deems appropriate.

Case 1:07-cv-11828-RGS   Document 1   Filed 09/27/07   Page 7 of 8

-7-

Respectfully submitted,


RONALD J. TENPAS
Acting Assistant Attorney General
Environment and Natural Resources Division

*/s/ Donald G. Frankel*

DONALD G. FRANKEL
PETER K. KAUTSKY
Trial Attorneys
Environmental Enforcement Section
Environment and Natural Resources Division
One Gateway Center
Suite 616
Newton, MA 02458
617-450-0442
202 - 514-3907


MICHAEL J. SULLIVAN
United States Attorney
District of Massachusetts


GEORGE B. HENDERSON, II
Assistant United States Attorney
District of Massachusetts
United States Attorney's Office
John Joseph Moakley United States Courthouse
Suite 9200
1 Courthouse Way
Boston, MA 02210
(617) 748-3100

-8-

OF COUNSEL:

AUDREY ZUCKER
JOHN HULTGREN
Office of Regional Counsel
U.S. Environmental Protection Agency
Region I
1 Congress St.
Boston, MA 02114-2023
(617) 918-1788
(617) 918-1761